UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:21CR602 SRC/NCC |
| | ) |
| PAULO FINCH, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

The above matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b).

On November 22, 2022, defendant filed a motion to compel the production of video evidence of his arrest that was recorded by police officers and seized as evidence. [ECF No. 43.] The Government counters that the requested video cannot be produced as it does not exist. [ECF No. 46.] On April 4, 2024, the undersigned held a hearing on defendant's motion. On April 25, 2024, defendant filed a notice of intent to waive the filing of pretrial motions. [ECF No. 56.] The transcript of the hearing was filed on April 30, 2024. [ECF No. 57.]

**INTRODUCTION**

Defendant issued pretrial subpoenas for the testimony of witnesses with the St. Louis Metropolitan Police Department (SLMPD) seeking a pretrial hearing to "determine the status" of any body-worn camera footage that exists of his arrest on October 12, 2021. He claims that the matter is unresolved because SLMPD SWAT Officer Bennie Blackmon's police report states that the events of defendant's arrest were captured on his body-worn camera, leaving defendant to believe the SLMPD may have failed to preserve the evidence. The Government claims that it has met its disclosure obligations under Rule 16, Fed. R. Crim. P., having searched for body-

worn camera video worn by Officer Blackmon and others in this case and concluding there is none to produce.[1]

The undersigned heard arguments from counsel about the merits of their positions as to the appropriateness of a hearing on the motion. AUSA Martin proffered that Officer Blackmon was assigned to the SWAT unit October 12, 2021, which primarily serves search warrants. Officer Blackmon also had "directed patrol assignment" duties during his shifts, which can involve attempted traffic stops, like the alleged incident involving defendant. Officer Blackmon rode in a patrol vehicle equipped with dash camera that began recording simultaneously with the activation of the patrol car's lights. He wore a body camera that he thought activated automatically if he was running during a foot pursuit. The cameras were relatively new equipment to SLMPD officers in October of 2021.

Typical SWAT team operations involved a concentrated presence in a neighborhood supported by frequent radio communications so that one patrol officer could take over a pursuit of a fleeing vehicle, if need be, from another SWAT member. The encounter with defendant Finch while driving was not recorded continuously on Officer Blackmon's dash camera because he was not in a continuous traffic pursuit of defendant. Other officers took over various stages of the pursuit prior to Officer Blackmon's foot pursuit of defendant. The AUSA argued that Officer Blackmon assumed his body-worn camera was recording automatically because the system was

---

[1] The Government has previously disclosed police radio communications and body-worn camera videos about this case from Sgt. Michael Scego and in-car camera videos from Officer Blackmon's patrol vehicle for a 24-hour period, including matters unrelated to defendant Finch. Sgt. Scego was neither the arresting officer nor the reporting officer in this case. In addition, the AUSA has disclosed to defendant his communications with SLMPD regarding the search for all video that were directed to the police department's Body Camera Unit.

Defendant was also in possession of the 2022 SLMPD retention policy prior to the hearing.

designed to sense the motion of running and then auto-record images. The Government further argues that Officer Blackmon has never seen video of the incident generated by his body camera because it does not exist. As a result, the Government decided before the pretrial hearing to disclose 24 hours of SLMPD video to defendant from the neighborhood patrol around the time of his arrest. The video is overinclusive of events unrelated to Finch. The Government disclosed the 24-hour video clip to assure defendant of the findings.

Defendant argued that Officer Blackmon's written report *did* indicate that he activated lights and sirens at some point during the pursuit of defendant and, still, no recording of dashcam was disclosed. He contends that there was no pre-and post-shift testing of the holster trigger designed to activate the automatic recording, and which is required by department policy. No malfunction was reported or disclosed. Finally, defendant Finch has information that Officer Blackmon was disciplined in October 2021 prior to these events for misuse of the in-car camera policy.

Defendant has no quarrel with the AUSA Martin's efforts to inquire and resolve this matter, but he questions the reliability of unsworn statements by the SLMPD about the nature of the search for video and its results. He seeks the testimony of several witnesses, an officer with the body camera unit to testify about the SLMPD policies for creation and retention of body-worn camera video, and details of the search conducted in this case.

The AUSA argued that defendant Finch cannot use a pretrial hearing to conduct an unauthorized discovery deposition. The Government asked that defendant's request for a hearing and his motion be denied with assurances that the Government will comply with the obligations of Rule 16.

3

The Court granted defendant's motion for a hearing and allowed the testimony of Officer Carmen Major with the SLMPD Body Camera Unit.

Based on the evidence, testimony adduced, and arguments of counsel, as well as a review of the transcript of the hearing in this matter, and after having had an opportunity to evaluate the credibility of the witness and observe her behavior, the undersigned makes the following findings of fact and conclusions of law. Defendant's motion to compel is denied for the reasons stated below.

## FACTUAL BACKGROUND

At the time of the hearing, Officer Major had been a commissioned police officer for five years and employed with the SLMPD since 2007. In July 2020, she joined the Body Camera Unit after the implementation of the body-worn camera program and before officers began wearing the equipment in November 2020. Her duties include the processing of all video requests from the cloud based "AVaiLWEB" database, including those initiated by the U.S. Attorney's Office in this district. She conducts the searches and oversees the collection and distribution of material responsive to requesting prosecutor's offices.

AVaiLWEB is a retention-based system that stores different categories of police events for varying amounts of time. Arrest-related video is saved automatically for seven years. Police cars are outfitted with a device called ROCKET, which assesses Wi-Fi devices to capture videos on body-worn camera equipment to be uploaded automatically to the cloud when an officer is within a certain proximity of the device. Officers have no personal responsibility to upload videos other than making sure their device is connected to Wi-Fi by the end of a work shift. They can view body-worn camera images through a cell phone application to confirm that video exists. The system also makes an audible broadcast that announces, "recording," when activated.

4

After seven years, the system auto-deletes arrest-related video and maintains a permanent record that a video once existed. The database retains other categories of video for shorter periods of time. For instance, test videos are maintained for three months, and miscellaneous videos are maintained for six months. The SLMPD is switching to a new storage database named POLARIS.

Officer Major is familiar with the search process as part of her duties and responsibilities. Her method for conducting a search begins with reading and imputing the SLMPD complaint numbers into the database. She can also review police reports and search manually by name of individual police officers associated with an incident because individual police offices are not uniformly "tagged" in the report. Sometimes other assisting officers are referenced only in the narrative section of a police report, so it is her practice to read the relevant reports to identify all officers' names. She can also search by date, police car number or patrol car number assigned to an officer. She uses each of these search criteria as part of her routine search protocols. If she retrieves a responsive video, she watches portions of the video to confirm that it is related to the request prior to sending the information to the requesting office.

In 2022, Officer Major responded to such a request by AUSA Martin about SWAT Officer Blackmon and other assisting police officers regarding defendant's arrest in this case. On January 5, 2023, she conducted a search and determined that no officers present had body camera footage of the encounter with defendant Finch. She believes that she was the only officer to conduct a search responsive to the U.S. Attorney's Office in this matter. Officer Finch followed her usual practice of memorializing her findings on a department form that she provided to AUSA Martin.

On cross examination, Officer Major confirmed that the SLMPD was subject to a special order to establish guidelines for the use of body camera and in-car camera systems in 2021. The policy included mandatory training approved by the police department to ensure proper use and operation of the camera equipment. The police department has also adopted a variety of methods to ensure that the equipment functions as designed. One current testing method requires officers to remove their guns from their holsters during roll call, to activate the holster sensor to see if automatic recording begins. Officers must do a similar test after a work shift ends. Officer Major did not think that the mandatory pre- and post-shift testing requirement was in place during 2021. The testing requirement was implemented sometime later, and the SWAT unit did not utilize holster sensors at all because their work involves stealth operations. Officer Blackmon was not supplied with a holster sensor during 2021.

In 2021, SLMPD officers could activate the system manually by tapping his or her chest three times. Auto-triggers for body camera involved the equipment sensing the officer's motion while running and opening the car door when the overhead lights were active and leaning his body over at a certain angle. This latter trigger is the "body-worn down," sensor, and which also prompts an audio broadcast announcement. An officer can manually stop the "body-worn down" recording within 15 seconds by manual control of a media device given to officers. Auto-triggers for dashcam recording include when an officer 1) turned on overhead patrol car lights, 2) drove faster than 60 miles per hour in a patrol car and, 3) neared the scene of a Code One call, like a shooting, for example.

## DISCUSSION

The SLMPD has adopted a standard search protocol to retain and retrieve body-worn video. Officer Major explained the reasonable search methodology she followed in this case and

testified that no video was found. Body-worn camera video of the events leading to defendant Finch's arrest would be material, if it exists, but Officer Major testified credibly that she searched diligently and there is no video as a result of her search. In addition, there is evidence that SWAT officers did not have holster sensors because the recording mechanism made an audible sound when activated.

A defendant has rights to certain information under Federal Rule of Criminal Procedure 16(c). Rule 16 sets forth the materials that the government must disclose that are within the government's possession, custody, or control and

> (i) the item is material to preparing the defense;
>
> (ii) the government intends to use the item in its case-in-chief at trial; or
>
> (iii) the item was obtained from or belongs to the defendant.

There is no evidence here that the body-worn video defendant Finch seeks is in the possession, custody or control of the Government. There is credible evidence that the SLMPD has searched for it, and it does not exist. The Government cannot produce what does not have and, therefore, such evidence will not be an item offered in its case-in-chief at trial. The witnesses can testify to their independent recollection of events.

Therefore, defendant Finch's motion is granted to the extent that the Government shall provide to defendant the following material or information, if any exists, as to any person who it calls as a witness at trial in this case including:

1. The prior criminal history of convictions of the witness;

2. Any consideration offered or given to the witness in exchange for his/her testimony and/or cooperation in the investigation of the case; and

3. Any statement of the witness which relates to the subject matter about which he/she is

7

to testify (Jencks Act Material).

Inasmuch as defendant Finch requests disclosure of such evidence, it should be granted. In all other respects, it should be denied.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion to compel [ECF No. 43] is **DENIED.**

**IT IS FURTHER ORDERED** that at the direction of United States District Judge Stephen R. Clark this matter will be set for a trial date a later date and no further report and recommendation from the U.S. Magistrate Judge shall issue.

_____
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE

Dated this 7th day of June, 2024.